## St. Bartholomew's Church *v.* Wood.

1. A judgment entered by a prothonotary under a power contained in the instrument, is a judicial act, and has the same effect as a judgment confessed by attorney or given in open court. The entry of an amicable action and confession of judgment has the same effect.

2. An amicable action and confession of judgment between the plaintiff and a church, signed by the rector and churchwarden, with the corporate seal, was filed in the prothonotary's office; the judgment entered thereon was not *void* although the persons signing may not have had authority.

3. It is the owner only of the estate taken in execution who can waive the inquisition.

4. A sale on fi. fa. without a waiver of inquisition is without authority and void, and is not confirmed by the acknowledgment of the sheriff's deed and distribution of the proceeds.

5. Spragg *v.* Shriver, 1 Casey 282, considered and explained.

6. A venditioni exponas is in legal contemplation issued by the court; is its express command to sell, under its seal and cannot be disobeyed by the sheriff.

7. The acknowledgment of a sheriff's deed cures irregularities in process or proceedings, but not want of authority to sell.

8. On the trial of an ejectment against the vendee of a purchaser at sheriff's sale on a fi. fa. under a judgment confessed and waiver of an inquisition, evidence offered by the plaintiff to show that no waiver was made or authorized by the defendant in the execution, and that a paper filed containing the waiver was a fraud, was rejected by the court below. *Held* to be error.

9. That the sale was made *on* and not *before* the return-day of the writ did not render it void.

10. Under Act of April 16th 1845, § 2 (Execution), the practice has been to sell on any writ of fi. fa., &c., at any time not later than Saturday of the first week of the term.

February 15th and 16th 1869. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 220, to January Term 1868.

This was an action of ejectment by the Rector, &c., of the Church of St. Bartholomew against James F. Wood and Edward McCann. The premises in controversy were a church and lot of ground in the Ninth Ward, Philadelphia.

The plaintiffs were incorporated December 8th 1849, and were

[St. Bartholomew's Church *v.* Wood.]

the owners of the premises on and for some time before the 20th of May 1865, subject to three mortgages to the trustees of the estate of Joseph P. Norris, the aggregate principal of which amounted to $4250, and on which interest for about twelve years was due. On the 20th of May 1865, an amicable action was entered in the District Court between John Gibson and the plaintiffs, and judgment confessed to Gibson for $361. The agreement for the entry of the action and confession of judgment was signed by "N. M. Jones, Rector," and " Geo. M. Taylor, Warden," with the seal of the church.

Under this judgment and subject to the mortgages, the premises were sold to James Otterson, Esq., for $200, and conveyed to him by the sheriff on the 8th of July 1865. On the 20th of September 1865, Mr. Otterson conveyed to the defendant, Bishop Wood, who went into possession and has continued in possession by his tenants ever since. On the 12th of March 1866, on a writ of error *coram nobis*, the District Court reversed the judgment in favor of Gibson under which the premises had been sold. On the trial before Hare, P. J., the plaintiffs showed their original title; and the defendants admitted their possession. The plaintiffs then rested. The defendants offered in evidence the record of Gibson's judgment : fi. fa. thereon with waiver of inquisition ; sheriff's sale under the fi. fa. on the 3d of July, which was the return-day of the writ ; to be followed by proof of confirmation of sale and sheriff's deed to Mr. Otterson. The paper containing the waiver. had a statement of the parties to the case, debt, costs, &c., and a description of the property levied on ; it concluded with the waiver as follows :—

" The defendant waives any inquisition and condemnation, and requests the sheriff to. sell under this writ.
For the church,
[SEAL.]                                    ISAAC NORRIS,
                                            GEO. M. TAYLOR,
                                                *Churchwardens.*"

The plaintiffs objected to the admission of the evidence, because the judgment had been reversed for fraud ; because the judgment was confessed by parties not having authority ; because there was no proof of the seal to the confession ; because of want of proper parties on the face of the waiver ; because the sheriff's sale was not made *before* the return-day, and because there was no specific statement of the cause of action as required by the rule of court. The objections were overruled, the evidence admitted and a bill of exceptions sealed for the plasntiffs. The defendants then gave in evidence the sheriff's deed to Mr. Otterson dated July 8th 1865, and his deed to Bishop Wood dated September 25th. They further proved the payment on the 28th of September 1865,

11 P. F. SMITH—7

[St. Bartholomew's Church *v.* Wood.]

of the Norris mortgages, amounting, principal and interest, to $7533.34. They gave evidence that Mr. Otterson sold the property to Bishop Wood for $15,000, and that the Norris mortgages were paid out of that sum. Mr. Otterson testified that the church was occupied by the plaintiffs until the sale to Bishop Wood; that after the sheriff's sale witness received the keys from the rector, Mr. Jones, and handed them back to him, taking a receipt from him, and saying that so far as he was personally concerned, if the church would pay the judgment he would convey his title to them. Some time in September witness was informed that the bishop was willing to buy the property, and he told Mr. Jones.

The defendants rested.

The plaintiffs in rebuttal offered the record of the proceeding of the writ of error *coram nobis* to show that the judgment had been reversed; also the minutes of the plaintiffs to show that no authority had been given to sign the waiver of inquisition or affix the seal; also to prove by Gibson, the plaintiff in the judgment, that he had been applied to by Isaac Norris, Esq., to have his claim placed in the hands of Mr. Norris's counsel for the mere purpose of having it secured with other claims against the church; that the sale and deed had been made without any knowledge by Gibson, to be followed by proof that the Catholics were negotiating with Mr. Norris for the purchase of the premises just before the transaction, and that he procured them possession immediately after its consummation; also to prove by Rev. G. A. Durborrow, a clergyman of the Episcopal Church, that just before the confession of judgment he heard a committee of Roman Catholics negotiating with Mr. Norris for the purchase of the church, to be followed by proof that Mr. Norris at once procured the confession of judgment, and immediately after the sale procured the church for the defendants; also to prove by Rev. Dr. Howe, an expert in the laws, &c., of the Episcopal Church, that a rector and churchwarden have no authority to confess a judgment or waive an inquisition, binding the real estate of the church; also to prove by Mr. Jones, the rector, that the confession was signed by witness and Mr. Taylor, and the seal affixed by Mr. Norris,—who had no right to its custody, being improperly in his custody,—without any authority of the church to do so; that the waiver was signed, and the seal affixed by Mr. Norris without authority and without the knowledge of the vestry or congregation, until long after the sale and sheriff's deed, and that Mr. Norris never was a warden of the church; also by Carpenter Wharton that on the 24th of February 1865 Mr. Norris informed him that Bishop Potter and he had agreed that money could be raised to pay the encumbrances on the church, that witness was requested to raise money to pay the debts, that at their next interview Mr. Norris informed witness that the Catholics were negotiating for the

church, that afterwards Mr. Norris changed his course of behavior and declined to assist raising the money; also to prove by Mr. Durborrow that after the purchase of the church by defendant, witness on behalf of the Episcopal Church offered him $20,000; that the offer was refused, as being much too small, the property being worth above $30,000; also to prove by Charles E. Lex, Esq., that no authority had been obtained from the committee of the diocese according to the charter to issue the bond on which the judgment had been obtained; also to prove by Charles M. Burns that at the time the Norris mortgages were given, it was the understanding of the people of the church as frequently expressed by Mr. Norris, that no interest was to be claimed on them nor the principal ever asked for; also to prove by George M. Taylor that the confession of judgment and waiver were brought to him by Mr. Norris, who requested him to sign them; that witness signed them without authority of the church, saying to Mr. Norris that whatever he recommended would be right. All these offers were rejected by the court, and several bills of exceptions sealed for the plaintiffs.

The plaintiffs then closed and submitted the following points:—

1. The plaintiffs in this case have shown a clear title in themselves to the premises described in the writ, which no evidence given on the part of the defendants has proved to have been divested.

2. The foundation of the defendants' title in this case is an alleged judgment which they claim one John Gibson obtained against the plaintiffs; which was invalid at the time of the sheriff's sale, on the process issued thereon, by reason of its having been entered in violation of the 44th rule of this court. No title passed therefor at said sheriff's sale.

3. If the jury find from the evidence that the parties signing the paper, upon which the judgment of Gibson was entered, had no authority from the plaintiffs, express or implied, to execute the same, and no authority to execute the same being recited upon the face of said paper, the judgment was void, and no title passed to the purchaser at the sheriff's sale, on the process issued thereon.

4. By the law of Pennsylvania, a rector and churchwarden have not authority by virtue of their offices to confess a judgment to bind the real estate of the corporation in which they hold said offices. The judgment of Gibson, having been so confessed, was void, and the sheriff's sale on the process issued thereon passed no title to the purchaser.

5. In order that the sheriff's sale of a defendant's lands of which he is possessed upon a fi. fa. without an inquisition should be valid, it is necessary that the defendant himself, or some one by his expressly delegated authority, should waive the holding of the inquisition; and in this case, if the jury find from the evi-

[St. Bartholomew's Church *v.* Wood.]

dence that the waiver of an inquisition, handed the sheriff on Gibson's judgment, was executed without the authority of the plaintiffs, the sheriff's sale, under which the defendants claim, was void, and no title passed to the purchaser.

6. The sheriff's sale having been held *upon* the return-day of the fi. fa. upon which it was made, and not *before* that day, was *ipso facto* void, and no title passed to the purchaser.

The court refused all the points; and further charged:—

" In the view which I take of the law, this property having been sold at sheriff's sale, having been bought by Mr. Otterson, representing certain judgment-creditors, and having been resold by him to Bishop Wood for the Catholic Church, a good title passed to the defendants, which is to say, to the Catholic Church, or Bishop Wood, for it. If Mr. Otterson paid his money to the sheriff, as he stated, and if Bishop Wood paid his money to Mr. Otterson, as he (Mr. Otterson) has stated, and counsel do not dispute, your verdict ought to be for the defendants in this case."

The verdict was for the defendants. The plaintiffs took a writ of error and assigned 19 errors.

The specifications from 1 to 12, inclusive, were to the rulings upon the questions of evidence in their order: from 13 to 18 to the answers to the plaintiff's points, and 19 to the direction to the jury to find for the defendants.

*N. H. Sharpless,* for plaintiffs in error.—On the reversal of Gibson's judgment the plaintiffs would have been entitled to the land but for the Act of 1705, § 9, Sm. L., 61 Purd. 443, pl. 80, which provides that lands sold under a judgment .afterwards reversed shall not be restored. This act protects sales made under *irregular* not *void* judgments: Burd *v.* Dansdale, 2 Binn. 92; Nass *v.* Van Swearingen, 7 S. & R. 192; Caldwell *v.* Waters, 6 Harris 79; Gibson *v.* Winslow, 2 Wright 49. There was no valid judgment here. Act of June 13th 1836, § 41, Purd. 198, pl. 24, provides that a writ shall be served on specified officers none of which appear in Gibson's suit. The rector had no control of the temporalities of the church: Act of April 26th 1855, § 6, 7, Purd. 865, 866, pl. 8, 9, 11, Black. Com., p. 395. The corporation should have appeared by attorney: Angell & Ames on Corporations, §§ 281, 637, 1 Tidd's Pr. 92 and 109; Kent's Comm. 291; Bushel *v.* The Commonwealth Ins. Co., 15 S. & R. 184; Washington and Pitts. Turnpike Co. *v.* Cullen, 8 S. & R. 517.

" A levy and sale without inquisition, or a waiver of it *by the real owner of the land,* is absolutely *void,* and conveys no title to the purchaser:" Baird *v.* Lent, 8 Watts 423; McLaughlin *v.* Shields, 2 Jones 290; Shoemaker *v.* Ballard, 3 Harris 94; Wolf *v.* Payne, 11 Casey 97. The persons who executed the waiver were not the owners, nor did they represent them. The sale

[St. Bartholomew's Church v. Wood.]

should have been *before* the return-day: Act of June 16th 1836, § 45, Purd. 439, pl. 52; Cash *v.* Tozer, 1 W. & S. 519. The evidence rejected bore on the question of fraud, and should have been submitted to the jury: Haughey *v.* Strickler, 2 W. & S. 414; Cummings *v.* Cummings, 5 Id. 556; Tams *v.* Bullitt, 11 Casey 312; Balt. and Ohio Railroad *v.* Hoge, 10 Id. 221. As to the question of fraud: Mitchell *v.* Kintzer, 5 Barr 216; Kintzer *v.* Mitchell, 8 Id. 79; Jackson *v.* Summerville, 1 Harris 369; Gilmore *v.* Rodgers, 5 Wright 127.

*W. L. Hirst* and *G. W. Biddle*, for defendants in error.— Irregularities do not affect a title under a sheriff's deed; the objection should be made before the acknowledgment of the deed: Zeigler *v.* Houtz, 1 W. & S. 533. The levy controls all subsequent proceedings: Streaper *v.* Fisher, 1 Rawle 155. As to irregularities generally: Jones *v.* Gardner, 4 Watts 416; Hartley *v.* Beaum, 2 Barr 165; Owen *v.* Simpson, 3 Watts 87; Cooper *v.* Borrall, 10 Barr 491; Stackpole *v.* Glassford, 16 S. & R. 163; Smull *v.* Mickley, 1 Rawle 95; Dalzell *v.* Crawford, 1 Pars. Eq. Cas. 46; Overton *v.* Tozer, 7 Watts 331; Feger *v.* Keefer, 6 Id. 299; Hinds *v.* Scott, 1 Jones 26; Wilson *v.* Howser, 2 Id. 109; Hunt *v.* Devling, 8 Watts 403; Crawford *v.* Boyer, 2 Harris 380; Kimball *v.* Kelsey, 1 Barr 185. Knowledge at the sheriff's sale of the confession of judgment without authority shows acquiescence: Cyphert *v.* McClune, 10 Harris 195; Elliott *v.* McGowan, Id. 198; McFee *v.* Harris, 1 Casey 103; Gibson *v.* Winslow, 2 Wright 50; Colborn *v.* Trimpey, 12 Casey 463; Spragg *v.* Shriver, 1 Id. 282; Meanor *v.* Hamilton, 3 Id. 137; Mitchell *v.* Freedley, 10 Barr 208. Corporations are affected by implications as individuals: Commonwealth *v.* Cullen, 1 Harris 139.

The opinion of the court was delivered, March 8th 1869, by
AGNEW, J.—The nineteen assignments of error in this case need not be noticed in detail, they can be classified. The 1st, 2d, 13th, 14th, 15th and 16th, relate to the judgment on which the property was sold. A judgment entered by the prothonotary under a power contained in the instrument, is a judicial act, and by the words of the Act of 1806, has the same force and effect as a judgment confessed by an attorney or given in open court in term time: Hevete *v.* Rapp, 7 S. & R. 306. By long usage the same effect is attributed to the entry of an amicable action and confession of judgment: Cook *v.* Gilbert, 8 S. & R. 568; McCalmont *v.* Peters, 13 Id. 196; Flanigen *v.* City of Philadelphia, 1 P. F. Smith 491. In Reed *v.* Hamet, 4 Watts 441, it was held that a defendant can appear in person before the prothonotary and confess a judgment, the reason assigned being that the power of the prothonotary to sign judgment rests on the statutory grant of

[St. Bartholomew's Church *v.* Wood.]

it, when that officer was ex officio a judge of the Common Pleas, which has not been revoked. The instrument in this case contained an authority to confess judgment and being sealed with the seal of the corporation and signed by the rector and a warden, the judgment was therefore not void. Under the 9th section of the Act of 1705, the sheriff's sale remained unaffected by the subsequent reversal of the judgment and restitution of the money or price only could be awarded. There was no error in the bill of exceptions and charge of the court referred to in these assignments of error.

The 4th and 5th, first half of the 7th, the 8th, 9th, 10th, 11th and 12th errors, refer to bills of exception to the rejection of offers of evidence. What was the purpose of the offer or the ground of objection appears nowhere. It is said that the purpose was to prove fraud, but it might have been to prove want of authority merely, or if the purpose was to prove fraud the objection might have been that there was no offer to show that the defendant bought with notice of the fraud.

In either case we cannot say there was error, and we might do injustice both to the party and the court by reversing upon grounds not taken below. It is said these offers were but single steps in the evidence of fraud. But this should be made manifest to the mind of the judge. We have said in Davenport *v.* Wright, 1 P. F. Smith 295, "While it is true that evidence in a cause, especially in proof of fraud, proceeds step by step, and a party need not state in a single offer everything he intends to prove, it should appear to the judge that the evidence has some relevancy to the issue trying; and if he is not informed of the connection it has, we cannot say he has committed a clear error in rejecting it." These errors are therefore not sustained. The 3d, 6th, latter part of the 7th and 17th and 18th errors, relate to the effect of the sale on the fi. fa. The propositions contained in the bill of exception referred to in the 3d, 6th and latter part of the 7th assignments of errors are in substance to prove that the corporation did not authorize the waiver of inquisition and that the paper purporting to be a waiver was fraudulent and void, the seal being placed to it by a person having no right to its custody and no authority to affix it, and the persons signing the paper having no authority to do so. According to the terms of the 45th section of the Act of 16th June 1836, it is the owner only of the estate taken in execution on the fi. fa. who can waive the inquisition, and so the decisions run : Wolf *v.* Payne, 11 Casey 97 ;. McLaughlin *v.* Shields, 2 Jones 289; Hudson *v.* Clark, 2 Grant 110. The evidence offered was to prove that the waiver was a fraud and inoperative, and that the sale was in fact made without a waiver of inquisition and void. That a sale on a fi. fa. without a waiver of inquisition is without authority and void is firmly established

[St. Bartholomew's Church v. Wood.]

by repeated decisions. It was held so expressly in Baird v. Lent, 8 Watts 422; McLaughlin v. Shields, 2 Jones 289; Wolf v. Payne, 11 Casey 97; and Gardner v. Sisk, 4 P. F. Smith 506; and directly recognised in Shoemaker v. Ballard, 3 Harris 94, Rogers, J.; Wray v. Miller, 8 Id. 115, Woodward, J.; and Kelly v. Creen, 3 P. F. Smith 304, Strong, J. The only thing set up against this stream of authority is the reasoning of the judge delivering the opinion in Spragg v. Shriver, 1 Casey 282, a case not involving the question cited in Wolf v. Payne, *supra*, and commented on and distinguished in Gardner v. Sisk, *supra*. In Spragg v. Shriver, besides the entry on the docket of a waiver of inquisition referring to another execution, and the sale being made on a vend. exp. and not on a fi. fa. the defendants offered to prove that the defendant in the mean time released his title to the purchasers at the sheriff's sale and ratified the sale, that he surrendered his possession to them, and the purchase-money was applied to his debts, and that he told the purchaser from them that the title was good and that he had waived inquisition to save costs. The court below overruled the offer and held that the sale was absolutely void and incapable of ratification. This was assigned for error and was the case before the mind of C. J. Lewis in that opinion, and justified all he said in its application to the case before him. The sale was on a venditioni exponas, which, as remarked by Judge Bell in Crawford v. Boyer, 2 Harris 384, is in legal contemplation issued by the court itself. It is the express command of the court to sell, is under its seal and cannot be questioned or disobeyed by the sheriff. The reasoning of C. J. Lewis was not intended to show that a sale on a fi. fa. without a waiver of inquisition was but a mere irregularity, and if it were, it is *obiter dictum* incapable of overturning the long line of cases preceding it, and is itself overturned by Wolf v. Payne and Gardner v. Sisk. The latter was decided but two years ago by all the judges except Read, J., who was absent from sickness, and determined that a sheriff's sale on a fi. fa. without a waiver of inquisition is void, as wanting in authority, and is not confirmed by the acknowledgment of the deed or the distribution of the proceeds of sale. The acknowledgment of a sheriff's deed cures irregularities on the process or proceedings, but not a want of authority to sell. This was very fully proved by Gibson, C. J., and decided in Cash v. Tozer, 1 W. & S. 527, and again considered in Shields v. Miltenberger, 2 Harris 78, where Judge Bell, in an exhaustive opinion, discusses all the authorities and arrives at the same conclusion, that the acknowledgment affirms a voidable but not a void sale. This case was followed by McFee v. Harris, 1 Casey 102, delivered at the same term with Spragg v. Shriver, and the same judge (Lewis, C. J.), citing 2 Harris 79, says: "After acknowledgment of the sheriff's deed in open court, the title of the sheriff's vendee

[St. Bartholomew's Church *v.* Wood.]

cannot be affected by mere irregularities, however gross, nothing but fraud in the sale, or a want of authority to sell, can defeat his title." This makes it very clear Judge Lewis did not intend, in Spragg *v.* Shriver, to impute to the acknowledgment the effect sought now to be drawn from his opinion in that case. Gardner *v.* Sisk announces the same doctrine, and it certainly should be regarded as now the settled law of the state. We think the court erred, therefore, in rejecting the evidence offered to show that no waiver of inquisition was made or authorized by the defendants in this writ of fi. fa. and that the paper filed was in fact a fraud.

But we do not regard the sale void because it was made on the return-day of the writ and not before. Cash *v.* Tozer, 1 W. & S. 515, decided that a sale made on a fi. fa. after the return-day was void, but the 2d section of the subsequent Act of 16th April 1845, provides that all sales of real estate by sheriffs and coroners, shall be made on or before the return-day of the writs respectively, or within six days thereafter. Since that act the practice has been to sell on any writ, fi. fa., vend. exp. or levari facias, at any time not later than Saturday of the first week of the term.

It is proper to notice an aspect this case may assume on a re-trial, in order to prevent a misconstruction of the extent to which this opinion reaches. There was evidence tending, perhaps, to show that Bishop Wood bought from Mr. Otterson, the purchaser at the sheriff's sale, with the knowledge of the plaintiffs below, that possession was voluntarily surrendered by them, that a large part of the price paid by the bishop was applied to the payment of debts of the plaintiffs, who lay by until he had completed his purchase, and that he was an innocent purchaser, without notice of any defect in the sale.

In connection with these facts, if established, is the fact also, that the waiver of inquisition filed had the genuine seal of the corporation affixed to it, thus tending to mislead, and to produce the belief that the waiver was a valid act. We do not mean to decide on this state of facts, or how far they will afford protection to the purchaser. The facts are not before us, and indeed were not submitted to the finding of the jury, for this part of the case was never reached, in consequence of excluding the evidence which tended to prove that the waiver of inquisition was a fraud and was invalid. It would be improper now to anticipate the state of the facts as they may be found in another trial, and this part of the case is necessarily left open for the decision of the court below, upon whatever aspect the facts shall assume before him.

Judgment reversed, and *venire facias de novo* awarded.

SHARSWOOD, J., dissented and filed a dissenting opinion.